UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 08-11876-RGS

JEFFREY REGAN

v.

COMMONWEALTH OF MASSACHUSETTS by and
through the DEPARTMENT OF CORRECTION and
KARIN BERGERON

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

June 16, 2010

STEARNS, D.J.

Jeffrey Regan claims that his employer, the Massachusetts Department of Correction (DOC), largely through the agency of Superintendent Karin Bergeron, violated the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, et seq., by retaliating against him for requesting FMLA leave (Count I).[1]  The DOC moves for summary judgment on the

---

[1] In Count II, Regan claims that Bergeron interfered with his "FMLA rights" in violation of the Massachusetts Civil Rights Act (MCRA), Mass. Gen. Laws ch. 12, § 11I. Bergeron moves for summary judgment on Count II principally on the ground that the FMLA provides Regan with an exclusive remedy. The MCRA is a remedial statute that does not create substantive rights. Rather, it provides a mechanism to redress violations of rights guaranteed by state or federal law. See Hobson v. McLean Hosp. Corp., 402 Mass. 413, 418 (1988). The MCRA does not encompass rights granted by the FMLA because "the comprehensive detailed enforcement provisions of the FMLA show Congress' intention that the specific remedies set forth in § 2617 of the FMLA are the exclusive remedies for the violation of the FMLA." Desrochers v. Hilton Hotels Corp., 28 F. Supp. 2d 693, 695 (D. Mass. 1998) (ruling that the MCRA does not provide an alternative state means of redress for FMLA violations). Cf. Mouradian v. Gen. Elec. Co., 23 Mass. App. Ct. 538 (1987) (holding that the MCRA cannot be used as a remedy for a right secured by ch.151B, where the right could be vindicated under state employment discrimination laws). See also Hayduk v. City of Johnstown, 580 F. Supp. 2d 429, 485 (W.D. Pa. 2008) ("Although the Supreme Court and the Third Circuit have yet to directly

FMLA count asserting that there is no connection between Regan's request for FMLA leave and any alleged "adverse employment action."

There are two aspects to the FMLA. The first protects the substantive rights of the employee; the second sets out prohibitions on the employer. See Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 330 (1st Cir. 2005). The second aspect is the only one relevant here. Among prohibited acts is "interference" by the employer with an employee's exercise of his FMLA rights. In this regard, an employer's intent is irrelevant; the employee need only show an entitlement to leave and acts on the part of the employer that would have intimidated a reasonable employee in plaintiff's circumstances from attempting to exercise that entitlement. Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68-69 (2006). While not referenced specifically in the FMLA, case authority permits a retaliation theory to be pled as an FMLA "interference." See Colburn, 429 F.3d at 331-332.

To establish a prima facie case of retaliation, Regan must show that: (1) he engaged in protected activity under the FMLA; (2) he suffered an adverse employment action; and (3) there was some possibility of a causal connection between the protected activity and an adverse employment action on the part of the DOC, in the sense that "the two were not wholly unrelated." Id. at 336 n.10. See also Hodgens v. Gen. Dynamics

---

address the issue of the inherent incompatibility of the FMLA and § 1983 remedial schemes, almost every decision of which this Court is aware has held . . . that the FMLA provides the exclusive means of recovery for violation of rights created by the FMLA." (collecting cases)). But see Peterson v. Slidell Mem. Hosp. and Med. Ctr., 1996 WL 732840, at *3 (E.D. La. Dec. 16, 1996) (permitting both FMLA and § 1983 claims to proceed). As I agree with Judge Harrington's reasoning in Desrochers, Count II will be dismissed.

Corp., 144 F.3d 151,161 (1st Cir. 1998).

There is no dispute that Regan properly sought leave in order to care for his ailing wife.[2] Also not in contention is the factual history of Regan's requests for leave or the fact that his requests were ultimately granted by the DOC. What is in dispute is the manner in which the DOC reacted to the leave requests at or about the time they were submitted. Regan maintains that the DOC sought to punish him for requesting leave and to intimidate his exercise of his FMLA rights. From a summary judgment perspective, the DOC contends that none of the alleged retaliatory acts amount to an adverse employment action.[3]

In Regan's favor are his thirty-two years of service at the DOC during which he rose to the rank of captain, his consistently favorable performance reviews, the praise of his immediate supervisors, his careful stewardship of his sick time (in comparison to others who are alleged to have abused theirs), the fact that his troubles with the DOC (and Bergeron) arose coincidentally with his FMLA leave requests, the less than convincing explanation given by the DOC for its refusal to offer Regan a transfer when a 7:00 a.m. to 3:00 p.m. captain's shift became available,[4] and Bergeron's anomalous reach down

---

[2]While the DOC questions whether the wife's ailments are as severe as Regan portrays them, the medical evidence in the record suggests an onset of a debilitating disease of the nervous system (perhaps Lyme's). In any event, the DOC does not press the issue.

[3]The parties agree that the definition of an "adverse employment action" is identical under Title VII and the FMLA. See Metzler v. Fed. Loan Bank of Topeka, 464 F.3d 1164, 1171 n.2 (10th Cir. 2006); Hodgens, 144 F.3d at 160.

[4]The DOC maintains that Regan did not "apply" for the job, and that it paid $10,000 less than he was making. It appears from the record that neither of the other two captains

through the ranks into Regan's personnel requests when she took no interest in those of anyone else of a similar rank. In the DOC's favor is the fact that Regan's FMLA leave requests were always eventually granted, that some of Regan's complaints predate any of his requests and therefore could not have been causally related to the requests,[5] that other complaints appear too petty to amount to an adverse action as a matter of law (the squabble over the 2009 Christmas week vacation schedule, for example), and the fact that the DOC has plausible explanations for other of the alleged adverse actions. Nonetheless, as the on the one hand or the other weighing suggests, whether Regan was subjected to one or more disciplinary actions that could be viewed as adverse and causally related to his FMLA requests are issues of fact for a jury to decide.

## ORDER

For the foregoing reasons, the DOC's motion for summary judgment as to Count I is <u>DENIED</u>. Summary judgment as to Count II is <u>ALLOWED</u>. As Bergeron is named only in Count II, she is <u>DISMISSED</u> as a defendant in the case. The Clerk will set the remaining case for trial.[6]

---

(Oliveira nor Carvalho) "applied" for the position. Whether Regan was willing to accept less pay in order to care for his wife is an issue of fact.

[5] For example, Regan claims that an April 16, 2008 decision by the DOC to change his shift constituted an adverse employment action taken in retaliation for his application for or use of FMLA leave. The change in Regan's shift, however, was announced nearly two months before he first applied for FMLA leave.

[6] There may be some incentive for the parties to resolve the case or refer themselves to the court mediation program. Because of intervening cardiac problems, it is very unlikely that Regan will be able to return to work at the DOC. Consequently, as his counsel candidly acknowledged at the hearing, the only possible damages at stake involve some of Regan's unused sick time and his attorney's fees.

SO ORDERED.

s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE